GIBSON *v.* ARK. SOUTHERN PRODUCTION CO.

5-1731                                                      320 S. W. 2d 932

Opinion delivered February 23, 1959.

*Wayne Jewell,* for appellant.

*Mahony & Yocum, Melvin E. Mayfield, W. L. Jean, C. E. Wright,* for appellee.

GEORGE ROSE SMITH, J.   The appellants, a partnership engaged in servicing oil and gas wells, brought this suit against Arkansas Southern Production Company and upon trial recovered a judgment against that corporation for $3,862.43, for services rendered.   Upon fil-

ing the complaint the appellants had a writ of garnishment served upon Spartan Petroleum Corporation. The chancellor held that Spartan was not indebted to the defendant, Arkansas Southern, and the correctness of that ruling is the only issue presented for review.

There is little dispute about the facts. On March 27, 1957, Arkansas Southern orally agreed to sell to Spartan certain oil and gas leases, which were burdened with a $50,000 oil payment. The agreement did not contemplate that Spartan would pay any money to Arkansas Southern, but Spartan did agree to pay $8,066.13 to sixteen creditors of the seller. The president of the selling corporation testified that he believed at the time that he had listed with Spartan all the debts of the company, except for two loans that are unimportant here.

Spartan paid $2,500 to Warren & Hollyfield, one of the seller's creditors. Spartan deposited in escrow with the firm of Mahony & Yocum its check for the remaining $5,566.13, together with a list of the fifteen debts totaling that amount. At the same time the seller deposited with Mahony & Yocum an executed assignment of the leases that were being sold. The escrow agreement, which was oral, provided that the transaction would be consummated upon Mahony & Yocum's approval of the seller's title to the leases.

In April Mahony & Yocum approved the title, subject to a minor requirement, and the seller's assignment of the leases was placed of record on April 6. Three of the listed creditors, whose claims totaled $1,128.70, had been paid when the writ of garnishment was served on Spartan on May 3. In response to the writ Spartan denied that it was indebted to the defendant, Arkansas Southern, but admitted that it held the sum of $4,437.43 for the benefit of the creditors who had not yet been paid. Spartan paid the money into court, brought the unpaid creditors into the case, and asked to be discharged as garnishee. Upon final hearing the chancellor held that the garnishment had not captured in the hands of Spartan any money or property belonging to Arkansas Southern; the decree accordingly directed that

the $4,437.43 be distributed pursuant to the original list of creditors, twelve of whom were still unpaid. The present controversy arises from the fact that Arkansas Southern's indebtedness to the appellants was listed as amounting to $625, but, as we have said, the appellants actually recovered judgment against Arkansas Southern for the sum of $3,862.43.

The chancellor's ruling was correct. The appellants argue that Arkansas Southern really had control of the money placed in escrow with Mahony & Yocum and could have requested that this money be paid over to the selling corporation. The trouble is that the record does not sustain this argument. We can only conclude from the testimony that the purchaser was unwilling to entrust the purchase money to Arkansas Southern and therefore protected itself by the escrow arrangement. When the seller's title was approved the purchaser became liable to the various creditors. *Rice* v. *Wood,* 61 Ark. 442, 33 S. W. 636, 31 L. R. A. 609. Arkansas Southern then had no legal or moral right to demand that the money be paid to it. If it be said that Spartan's obligation to pay out $8,066.13 was fundamentally a duty owed to Arkansas Southern, the answer is that by the escrow agreement Arkansas Southern assigned to its creditors the right to receive the payment. A writ of garnishment does not reach a debt which the defendant, as creditor of the garnishee, has already assigned to another. *Samstag* v. *Orr,* 101 Ark. 582, 142 S. W. 1127.

As a secondary contention the appellants assert that Arkansas Southern is insolvent and that therefore, as a matter of equity, the chancellor should have substituted the appellants' $3,862.43 judgment for their listed claim of $625 and on that basis have distributed the money in court *pro rata* among the twelve creditors. The case cited, *State Nat. Bk.* v. *Wheeler-Motter Merc. Co.,* 104 Ark. 222, 148 S. W. 1033, does not support this contention. That case involved a general assignment for the benefit of creditors, which is a true insolvency proceed-

ing, and the rule of *pro rata* distribution was applicable.

In the case at bar there was no general assignment for creditors; the contract of sale and the escrow agreement apportioned a specified amount of the purchase money to each of the sixteen named creditors. If, owing to the seller's insolvency, the arrangement resulted in a preference to some of the creditors, it might have been subject to attack under the federal bankruptcy law, Remington on Bankruptcy (5th Ed.) § 130, but it was not voidable under the law of this state. *Gilkerson-Sloss Comm. Co.* v. *Carnes,* 56 Ark. 414, 19 S. W. 1061; *Gage* v. *Chastain,* 183 Ark. 641, 37 S. W. 2d 705.

Affirmed.