## GRAND STATE MARKETING *v.* EASTERN POULTRY DISTRIBUTORS, INC.

CA 97-1569                                        975 S.W.2d 439

Court of Appeals of Arkansas
Division II
Opinion delivered September 30, 1998

*Floyd A. Healy*, for appellant.

*Christopher O. Parker*, for appellee.

TERRY CRABTREE, Judge. This case concerns a contract for the sale of 858 cases of frozen chicken. The seller, appellant Grand State Marketing, filed suit to recover $11,668.80 due on the contract. The buyer, appellee Eastern Poultry Distributors, Inc., answered that it had revoked acceptance of appellant's product because some of the cases contained a cut of chicken inferior to that which was specified in the contract. The trial judge agreed that the goods were nonconforming and entered an order allowing appellee to deduct lost profits, transportation and storage charges, and attorney's fees from the amount owed on the contract. We affirm.

On February 26, 1996, appellee purchased 34,320 pounds of frozen chicken from appellant. The chicken was packaged in 858 forty-pound cartons and priced at $.34 per pound. According to two of appellee's traders, Joe Reed and Joe Rogers, they were assured by appellant that the poultry was split fryer breasts and no more than six to eight months old. After the sale, appellee in turn sold the chicken to Western Box Beef in Portland, Oregon, for $.64 per pound. Approximately two weeks later, Western Box Beef rejected 521 of the 858 cases (20,840 of 34,320 pounds). Appellee stopped payment on its check to appellant and notified appellant that the rejected cases contained pieces rather than split breasts and were dated 1994 rather than 1995. When appellant refused to accept a return of the 521 cases, appellee sold them to a buyer in Chicago for $.42 per pound.

On May 13, 1996, appellant sued appellee for the $11,668.80 contract price. Appellee claimed it was entitled to offset its lost profits on the 521 cases, storage charges incurred in Portland, and freight charges incurred in transporting the 521 cases from Portland to Chicago. After a nonjury trial, the judge found that the goods were nonconforming. He allowed appellee to deduct from the contract price $4,584.80 in lost profits; $328 in storage charges; $1,868.70 in freight charges; and, pursuant to Ark. Code Ann. § 16-22-308 (Repl. 1994), $678.15 in attorney's fees.

Appellant's first argument on appeal is that appellee did not properly revoke acceptance of the goods. This argument is based

upon the fact that appellee's representatives did not look at a sample of the chicken before purchasing it. In support of its argument, appellant relies on the following section of the Uniform Commercial Code, contained in Ark. Code Ann. § 4-2-608(1)(b) (Repl. 1991):

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
>
> . . . .
>
> (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

The above-quoted statute allows a buyer to revoke acceptance of a "lot or commercial unit." A "commercial unit" is defined in Ark. Code Ann. § 4-2-105(6) (Repl. 1991) as follows:

> "Commercial unit" means such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use. A commercial unit may be a single article (as a machine) or a set of articles (as a suite of furniture or an assortment of sizes) or a quantity (as a bale, gross, or carload) or any other unit treated in use or in the relevant market as a single whole.

The frozen chicken in this case was packaged in forty-pound cartons and was priced at $.34 per pound. Division of the product into cartons did not materially impair "its character or value on the market or in use," and a carton is similar to a "bale, gross, or carload" as referred to in the statute. Therefore, each carton constituted a commercial unit and appellee could properly accept some cartons and reject or revoke its acceptance of others. *See, e.g., Badger Produce Co., Inc. v. Prelude Foods Int'l, Inc.*, 130 Wis.2d 230, 387 N.W.2d 98 (1986) (in a sale involving 1,000 boxes of seafood, each box was a commercial unit). Additionally, when goods are sold by the pound, or other unit of weight, that unit of weight may be considered a commercial unit. *See Figueroa v. Kit-San Co.*, 123 Idaho 149, 845 P.2d 567 (1992) (product sold per

ton); *Askco Eng'g Corp. v. Mobile Chem. Corp.*, 535 S.W.2d 893 (Tex. Civ. App. 1976) (product sold per pound).

Turning now to the evidence in the case, it is undisputed that, before concluding the sale, Darrell Glen, appellant's chairman of the board, advised appellee's representatives that they could view a sample of the chicken. In fact, Glen called the storage facility where the chicken was located and gave the facility authority to release a sample. However, according to Joe Reed, both appellant and appellee wanted to move the chicken quickly, and there was no time to view a sample. Additionally, Reed said, it would have been hard to tell which cartons were conforming and which were not without looking at all 858 of them. Therefore, instead of looking at samples, Reed specifically advised Glen that he would rely on Glen's assurance that the chicken was 1995 production split fryer breasts. That testimony was confirmed by Joe Rogers.

██ Section 4-2-608(1)(b) does not always require a buyer to view the product prior to acceptance. It allows revocation if the buyer's acceptance of goods has been induced by the seller's assurances. Arkansas case law has recognized a buyer's right to revoke acceptance under such circumstances. *Dopieralla v. Arkansas La. Gas Co.*, 255 Ark. 150, 499 S.W.2d 610 (1973); *Parker v. Johnston*, 244 Ark. 355, 426 S.W.2d 155 (1968). Although Glen denies making any assurances with regard to the production date of the chicken, and denies making any quality assurance other than that the chicken was "wholesome," Reed and Rogers testified unequivocally that Glen assured them the poultry was 1995 production split fryer breasts. We view the evidence and all reasonable inferences therefrom in the light most favorable to the appellee. *Brady v. Bryant*, 319 Ark. 712, 894 S.W.2d 144 (1995). Given the testimony of Reed and Rogers regarding their reliance on Glen's assurances, we find no infirmity in appellee's revocation of acceptance.

██ ██ Next, appellant argues that appellee did not provide sufficient proof of the product's nonconformity. In particular, appellant claims that (1) the record is void of evidence indicating

that the 521 rejected cases were anything other than that represented by appellant; (2) that appellee failed to prove its damages; and (3) that appellee did not prove why Western Box Beef rejected the product. Before beginning our analysis of this issue, we note that, when a circuit judge is sitting as fact-finder, we will not reverse his findings unless they are clearly erroneous. *Schueck v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997). Whether goods are nonconforming is a question of fact. *O'Neal Ford, Inc. v. Early*, 13 Ark. App. 189, 681 S.W.2d 414 (1985). Nonconformity is to be determined within the framework of the facts in each particular case. *Frontier Mobile Home Sales, Inc. v. Trigleth*, 256 Ark. 101, 505 S.W.2d 516 (1974). The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the appellee. *Brady v. Bryant, supra.*

■■ For a buyer to revoke his acceptance of a lot or commercial unit on the basis of nonconformity, the nonconformity must substantially impair the value to the buyer. *O'Neal Ford, Inc. v. Early, supra. See also* comment 2, Ark. Code Ann. § 4-2-608 (Repl. 1995). Appellee successfully proved, through the testimony of Joe Reed, that the value of the goods in this case was substantially impaired. According to Reed, upon rejection of the 521 cases, Western Box Beef, as justification for its rejection, sent appellee a copy of a label from a nonconforming package. The label read "Frying Chicken Parts Breast Portions With Back Portions" and was dated 1994. Reed testified that 1994 production chicken had less value than 1995 production. He also said that the cut of chicken reflected on the label was a less desirable commodity than split fryer breasts. This was disputed by Darrell Glen. Glen testified that there was no difference between split fryer breasts and the cut of chicken shown on the label. Because the trial judge found that the goods were nonconforming, he obviously believed Reed's testimony. Decisions regarding the credibility of witnesses are to be made by the trier of fact. *Ozark Auto Transp., Inc. v. Starkey*, 327 Ark. 227, 937 S.W.2d 175 (1997). In particular, when a technical term is used, the trier of fact may determine in what sense the term was used. *Les-Bil, Inc. v. General Waterworks Corp.*, 256 Ark. 905, 511 S.W.2d 166 (1974).

Regarding proof of damages, the burden of proof is on the party claiming damages, and such proof must consist of facts, not speculation. *Marine Servs. Unlimited, Inc. v. Rakes*, 323 Ark. 757, 918 S.W.2d 132 (1996). If it is reasonably certain that profits would have resulted had the contract been carried out, then the complaining party is entitled to recover lost profits. *Tremco, Inc. v. Valley Aluminum Prod. Corp.*, 38 Ark. App. 143, 831 S.W.2d 156 (1992). The loss may be determined in any manner which is reasonable under the circumstances. *Id.* Incidental damages such as transportation and storage charges are also recoverable. *See* Ark. Code Ann. § 4-2-715 (Repl. 1991). Appellee proved through documentary evidence and testimony that it lost profits when it sold the rejected chicken at a price of $.42 per pound rather $.64 per pound. It also proved the amount of and necessity for the storage and freight charges. We find no failure of proof as to damages.

Finally, we conclude that there was no need to resort to speculation and conjecture to determine why Western Box Beef rejected the product. The company sent appellee a package label as justification for its rejection of the 521 cases. Reed testified that Western Box Beef had not before or since rejected an order from appellee. The package label sent to appellee reflected a product different than what appellee had represented it to be when it sold the chicken to Western Box Beef. Following the rejection, appellee was forced to sell the product at a reduced price.

Based upon the foregoing, we affirm the trial court's judgment.

Affirmed.

MEADS and ROAF, JJ., agree.