Charles R. HUDSON, Jr.; Deborah Tidwell Hudson; and
Routh Wrecker Service, Inc. *v.* Keith COOK

CA 02-263 105 S.W.3d 821

Court of Appeals of Arkansas
Division II
Opinion delivered May 21, 2003

*Henry Law Firm, P.A.,* by: *David P. Henry,* for appellants.

*Perroni & James, P.A.,* by: *Patrick R. James,* for appellee.

L ARRY D. VAUGHT, Judge. This is an appeal from a Pulaski County Circuit Court jury verdict awarding actual and punitive damages to appellee, Keith Cook, on claims of replevin, conversion, and interference with business and business expectancy.[1] Appellant Charles R. Hudson, Jr. (Hudson Jr.), raises seven points on appeal. The first three assert that the trial court erred in failing to direct a verdict because appellee failed to prove: (1) ownership of the property alleged to have been converted; (2) market value of the property at the time of the alleged taking; (3) lost profits or loss of business expectancy. The next four points deal with the award of punitive damages, alleging that the trial court erred: (4) in instructing the jury on punitive damages under the facts of this case; (5) in failing to direct a verdict with regard to the punitive-damages award; (6) in failing to direct a verdict with regard to the amount of punitive damages awarded as being excessive; (7) in failing to direct a verdict with regard to punitive damages because the amount awarded violates the Fourteenth Amendment's Due Process Clause, which imposes on state courts the Eighth Amendment prohibition against excessive fines and cruel and unusual punishment. An eighth

---

[1] The original judgment also included an award for damages against Routh Wrecker Service, Inc.; however, no appeal was filed as to that portion of the judgment.

point on appeal has been raised by appellant Deborah Tidwell Hudson asserting that the trial court erred in finding that funds in her possession, as a garnishee in the case, obtained by her to pay Hudson Jr.'s attorney's fees are subject to garnishment by appellee. Finally, appellee cross-appeals the reduction in punitive damages awarded by the trial judge.

While there has been a long-running dispute regarding rights to certain property that has been farmed by Hudson Jr.'s family for many years, the instant case deals with a specific incident that occurred on February 17, 1996. Hudson Jr. owns and operates a marina on the Little Maumelle River in Pulaski County, Arkansas. Part of the marina business is conducted on a segment of a fifty-six-acre tract of real property leased by Hudson Jr. from his stepmother, Glenna Hudson. The balance of the fifty-six-acre tract has for many years been farmed by the Hudson family. In January 1986, Glenna Hudson purchased the property at a commissioner's sale.

Appellee had a close relationship with Hudson Jr.'s father, Hudson Sr., and began helping him farm the fifty-six-acre tract of land in 1992. Appellee alleges that in 1995, he entered into an oral lease to farm that part of the Glenna Hudson property not under lease to Hudson Jr.'s marina. Appellee also states that he purchased a Case 1570 tractor and an International Harvester disc from Hudson Sr. for $30,000 in June 1995 in order to farm the land. He made a down payment of $5000 and agreed to pay Hudson Sr. the balance of the purchase price out of his portion of the crop sales.

A dispute arose over the location of the boundaries between the lease to the marina and that property subject to appellee's farm lease. On February 17, 1996, while discing the farm land, appellee came upon seven stakes located approximately 100–200 feet out in the area that was included in the area that had been farmed since at least 1986. Appellee did not know who had put the stakes there,[2] but he considered them to be on the property he had leased from Hudson Sr., and started discing up the stakes.

Upon noticing appellee's actions, Hudson Jr. drove his truck into the field and blocked appellee's tractor, and a confrontation

[2] The stakes had actually been placed by Ken Clark, a landscape architectural engineer hired by Hudson Jr. to conduct a survey of the fifty-six acres that was needed to begin an expansion of the marina proposed by Hudson Jr.

ensued between the two. Hudson Jr. allegedly jumped on the tractor and verbally and physically attacked appellee, at which point appellee supposedly grabbed a pistol to scare Hudson Jr. off the tractor. Hudson Jr. then reportedly grabbed a rifle, the two exchanged more words, and Hudson Jr. called the sheriff's office. The sheriff responded to the call and eventually arrested appellee. The charges were later dismissed. Hudson Jr. then called Routh Wrecker Service, Inc., and without permission from appellee, had appellee's tractor and disc removed from the property. Appellee subsequently attempted to recover the tractor and disc, but Routh Wrecker Service, Inc., would not release them without payment of towing and storage fees.

The boundary issues were joined in Pulaski County Chancery Court, Case No. 97-3056, and on June 5, 2000, an order was entered. Paragraph five of that order construed the lease agreement to permit farming up to the base of the levee road. On November 26, 1996, appellee filed the original action in this matter, seeking replevin of the tractor and damages against Routh Wrecker Service, Inc. On April 21, 1997, appellee amended his complaint and named Hudson Jr. as an additional defendant. On January 12, 2001, appellee filed a second amended and substituted complaint seeking replevin, damages for conversion, and for interference with business and business expectancy. The matter was tried before a jury on June 20, 2001. Appellee orally dismissed his claim for replevin during the trial. At the close of appellee's case, Hudson Jr. moved for a directed verdict on the basis that appellee failed to establish ownership of the tractor and disc, and that appellee had failed to prove damages. The motions were denied. At the close of the evidentiary part of the trial, Hudson Jr. once again moved for directed verdict on the same bases; again, the motions were denied. The jury returned a verdict against Hudson Jr. for $20,000 on the conversion claim, $15,000 on the claim for interference with business and business expectancy, and $250,000 in punitive damages.[3] Judgment was entered on July 25, 2001.

---

[3] The jury also returned a verdict in favor of appellee against Routh Wrecker Service, Inc., on the conversion claim and awarded damages in the amount of $10,000 and punitive damages in the amount of $35,000. Routh Wrecker Service, Inc., received a remittitur of punitive damages to $10,000. The remainder of this judgment was not appealed by Routh Wrecker Service, Inc.

On July 31, 2001, Hudson Jr. filed his motion for judgment notwithstanding the verdict, pursuant to Rule 50(b) of the Arkansas Rules of Civil Procedure. On August 22, 2001, the trial court heard and denied the motion, but granted a remittitur as to the punitive damages, reducing them to $200,000. The trial court's written order was signed on August 30, 2001, and entered on September 7, 2001. Hudson Jr. filed his notice of appeal on September 24, 2001. Appellee filed his notice of cross-appeal on September 27, 2001.

Appellee subsequently attempted to enforce the judgement. On September 7, 2001, appellant Deborah Tidwell Hudson was served with a writ of garnishment as a result of Hudson Jr.'s deposition, in which he described his sale to her of his one-half interest in a boat and other personal property, indicating that she had not yet paid him and owed him $12,500. In her responses to the writ of garnishment, Mrs. Hudson denied owing Hudson Jr. any money. At a hearing on October 31, 2001, Mrs. Hudson explained that the money was not owed to Hudson Jr., but rather to his attorney. She testified that $6000 had been paid to Hudson Jr.'s attorney after being served with the writ of garnishment. She added that the purpose of her purchase was to obtain a loan to pay Hudson Jr.'s attorney's fees. The trial court found the funds to be subject to garnishment and entered an order on November 5, 2001, granting appellee judgment against Deborah Tidwell Hudson for $6000. The trial judge also ordered her to produce any checks that she contended were written and deposited related to the remaining balance. She failed to do so, and on November 30, 2001, the trial judge granted appellee judgment against her for the remaining $6500. Deborah Tidwell Hudson filed her notice of appeal on December 5, 2001.

Before reaching the merits of the parties' arguments, we note that appellants abstracted their appeal under the previous abstracting rules and failed to include a number of important documents, including the respective notices of appeal in the addendum. It includes only the July 5, 2001 order, July 25, 2001 order, and the September 7, 2001 order. Accordingly, appellants are not in compliance with Rule 4-2(a)(8) (2002) of the Arkansas Supreme Court and Court of Appeals. We could order rebriefing pursuant to Rule 4-2(b)(3) (2002); however, appellants did abstract the notices and various other documents in their abstract, and the

record reveals that all the notices of appeal are timely for purposes of reviewing the judgments involved in this case.

### Direct Appeal

### 1. Whether the trial court erred in failing to direct a verdict because appellee failed to prove ownership of the property alleged to have been converted

■ Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Wal-Mart Stores, Inc. v. Lee*, 348 Ark. 707, 74 S.W.3d 634 (2002). Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* It is not the appellate court's place to try issues of fact, rather this court simply reviews the record for substantial evidence to support the jury's verdict. *Id.* In reviewing the sufficiency of the evidence as being substantial on appellate review, we need only consider the testimony of the appellee and the evidence that is most favorable to appellee. *Id.* Circumstantial evidence may meet the substantial evidence test. *Id.*

Hudson Jr. argues that because appellee's cause of action was one of trover and conversion, based in tort rather than contract, appellee must first prove by a preponderance of the evidence that he has an ownership interest in the property. *See Dugal Logging, Inc. v. Arkansas Pulpwood Co.*, 66 Ark. App. 22, 988 S.W.2d 25 (1999). Hudson Jr. maintains that appellee produced no written record or other documentation of his ownership of the property in question, but only offered testimony of a "gentlemen's agreement" as to the June 1995 purchase of the tractor and disc from Hudson Sr. However, appellee alleged the existence of a bill of sale and promissory note, but stated that he had left both documents at home.

■ Hudson Jr.'s stepmother, Glenna Hudson, testified that as far as she knew, the subject property belonged to her husband, Hudson Sr. Additionally, Hudson Jr. asserts that because there was no written proof of appellee's ownership, merely appellee's word against Glenna Hudson's, appellee failed to establish his ownership in the property, which is a critical element of his case. Failure to produce written evidence or documents entirely within

the control of the party with the burden of proof gives rise to an adverse inference that the missing evidence will not support the position advanced. *See McLendon v. Johnson*, 243 Ark. 218, 419 S.W.2d 309 (1967). *See also Smith v. United States*, 128 F. Supp.2d 1227 (E.D. Ark. 2000).

Hudson Jr. also argues that, at most, appellee was entitled to the amount of equity he had in the equipment, or the value of the tractor and disc less the balance of the purchase price left to pay. *See Barham v. Strandridge*, 201 Ark. 1143, 148 S.W.2d 648 (1941). He states that appellee failed to establish the balance due, interest rate, or other terms of the agreement, and accordingly did not establish by a preponderance of the evidence that he had an interest in the equipment in question upon which he could obtain relief.

Appellee argues in response that Hudson Jr. is invading the province of the jury and arguing the weight of the evidence. *See Union Pac. R.R. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997). He claims that Hudson Jr. even conceded at the hearing that this was an issue of fact that the jury decided against him. Appellee claims that he more than met the substantial evidence test with regard to proving that he is the owner of the equipment. He purchased the same from Hudson Sr. in 1995. It was the equipment that had previously been used to farm the land. He made a $5000 down payment on the $30,000 purchase price. He testified that he saw the bill of sale before purchasing the tractor, and that he actually has the bill of sale for the tractor. Appellee claims that while he was testifying as to the value of the equipment, the trial court *and* Hudson Jr. made it clear that he was testifying as the owner, although now Hudson Jr. maintains appellee did not provide substantial evidence of ownership.

 This is a factual issue, and under our standard of review there was sufficient evidence for the question of ownership, and the extent thereof, to go to the jury. Hudson Jr.'s arguments merely go to the weight of the evidence before the jury on this issue. Accordingly, we affirm on this point.

## 2. Whether the trial court erred in failing to direct a verdict because appellee failed to prove market value of the property at the time of the alleged taking

Hudson Jr. claims that in addition to ownership, appellee was required to prove damages to succeed in his claim of conversion. The measure of damages for the conversion of property in Arkansas is the market value of the property at the time and place of the taking. *JAG Consulting a/k/a Glad Indus., Inc. v. Eubanks*, 77 Ark. App. 232, 72 S.W.3d 549 (2002). Fair market value is defined as the price the personalty would bring between a willing seller and a willing buyer in the open market after negotiations. *Id.* Hudson Jr. asserts that at no time was any evidence given as to the market value of the equipment. Appellee did testify as to the purchase price of the equipment; however, the purchase took place in June 1995, seven to eight months prior to the occurrence in February 1996. Hudson Jr. also claims that because of the "loose, insider-financing" extended to appellee from his friend and mentor, Hudson Sr., the purchase price should not be considered as representative as the true market value. He asserts that while the jury awarded appellee the full purchase price against the two original defendants ($10,000 against Routh Wrecker Service, Inc. and $20,000 against Hudson Jr.), the purchase price was not the proper measure of damages and cites *Dawson v. Temp Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722 (1999), for the proposition that juries are not allowed to speculate as to market value. Appellee had the burden of proving the fair market value of the equipment in the lower court. Hudson Jr. argues that there was no documentation or other evidence produced as to the value immediately before the alleged taking. He claims that the jury could not have complied with the trial court's instruction to determine the fair market value immediately before the occurrence without engaging in pure speculation.

Appellee asserts that a loss may be determined in any manner which is reasonable under the circumstances. *See Quality Truck Equip. Co. v. Layman*, 51 Ark. App. 195, 912 S.W.2d 18 (1995). Appellee testified that he purchased the equipment from Hudson Sr., for $30,000 in June 1995, that it was converted only eight months later, and that the equipment was in substantially the same condition on the day it was converted as it was on the day he

purchased it. He further testified that Hudson Sr. bought the equipment in 1978 for $49,000, and that in seventeen years it had only lost $19,000 in value. Accordingly, he maintains that it would not have significantly diminished in value over the eight months between his purchase and the conversion. Hudson Jr. did not offer any contradictory evidence as to the value of the equipment at the time of the conversion.

Appellee claims that the measure of damages was not left to speculation or conjecture, but rather his testimony adequately established the amount of damages in relation to the equipment wrongfully converted by Hudson Jr. That testimony, in the absence of contradictory testimony, was sufficient to establish the value of the equipment at the time and place of the conversion. The jury was instructed as to the determination of the market value of the property. Based on our review, there was sufficient evidence for the jury to have reached a decision on this issue, and accordingly we affirm.

3. *Whether the trial court erred in failing to direct a verdict because appellee failed to prove lost profits or loss of business expectancy*

When a party seeks to recover anticipated profits under contract, he must present a reasonably complete set of figures to the jury and not leave the jury to speculate as to whether there could have been any profits. *See Grand State Mktg. v. Eastern Poultry Dist., Inc.*, 63 Ark. App. 123, 975 S.W.2d 439 (1998). Hudson Jr. maintains that in this case, appellee offered no proof of lost profits other than his undocumented testimony that he made somewhere between $2500 and $3000 the previous year. Appellee admitted that he kept no records, that the previous year's crop was sold in Hudson Sr.'s name, and that he did not report the income on his income taxes or even tell his wife about the alleged income. Hudson Jr. asserts that appellee pulled the numbers "from thin air," and without documentary evidence and a complete set of figures, there was no basis from which he could refute the claim for damages. He claims that appellee did not sustain his burden of proof with respect to lost profits and business expectancy and requests that the award to these elements of damage be set aside on the grounds that it was based on pure speculation.

Appellee testified, without objection, as to the lost profits and business. The disputed land consists of fifty-six acres of farm land. Based upon his experience, appellee maintains that the land in question would ordinarily yield 2000 bushels of soybeans per acre. In February 1996 and thereafter, the price of soybeans was approximately six dollars per bushel. Appellee testified that in farming the land in question, costs would typically run between $4000 and $5000 per year, including fuel, herbicides, oil filters, tires, bearings, grease, maintenance, etc.

■ ■ The farming agreement between appellee and Hudson Sr. provided that twenty-five percent of the profits from the crop would go to Hudson Sr. Multiplying six dollars by 2000 bushels would result in $12,000 in proceeds from the sale of the crop. Hudson Sr.'s twenty-five percent ($3000) was taken out of the proceeds prior to accounting for the $4000 or $5000 in expenses. After paying Hudson Sr., and paying other expenses, appellee estimated that he made between $2500 to $3000 per year and that he made approximately that amount in 1995. Appellee asserts that he in fact has provided adequate evidence of damages under the holding in *Grand State Mktg, supra*. Where it is reasonably certain that profits would have resulted, then the complaining party is entitled to recover lost profits. *Id*. Hudson Jr. failed to present evidence that the land would not have yielded the amount of soybeans estimated by appellee or for a different price. The loss may be determined in any manner which is reasonable under the circumstances. *Id*. We hold that appellee's testimony was sufficient evidence to support the jury's finding and affirm.

4. *Whether the trial court erred in instructing the jury on punitive damages under the facts of this case*

■ Hudson Jr. contends that the mere assertion of the conversion of personal property does not automatically permit a punitive-damages instruction. Appellee was required to show an intentional exercise of control or dominion over the converted property for the purpose of violating the owner's right to the property, or for the purpose of causing damages. *See City Nat'l Bank of Ft. Smith v. Goodwin*, 301 Ark. 182, 783 S.W.2d 335 (1990).

■ However Hudson, Jr. failed to object to the punitive-damages instructions being given during the jury-instruction con-

ference. It is well-settled that no party may assign as error the giving or failing to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of the objection. *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 175, 952 S.W.2d 658 (1997). Accordingly, the alleged error was not preserved and will not be considered on appeal.

> 5. *Whether the trial court erred in failing to direct a verdict with regard to the punitive-damages award*

██ ██ Under Arkansas law, an award of compensatory damages must exist before punitive damages can be awarded. *See Hale v. Ladd*, 308 Ark. 567, 826 S.W.2d 244 (1992). Additionally, it has been held that in the absence of an award for compensatory damages, punitive damages are barred, even where compensatory damages were suffered. *Bell v. McManus*, 294 Ark. 275, 742 S.W.2d 599, *opinion supplemented on denial of reh'g*, 294 Ark. 278-A, 745 S.W.2d 140 (1998). Hudson Jr. contends that appellee failed to offer sufficient proof to sustain the award of compensatory damages as discussed under points (2) and (3) herein; and accordingly, if we reverse on those points, an award of punitive damages would be barred, and the jury's award should be overturned. Conversely, appellee contends that the punitive-damages award is supported by both the damage award for conversion and the damage award for interference with business and business expectancy. He maintains that he did establish a basis for the award of punitive damages. Because we affirm on points (2) and (3), we hold that the punitive-damages award is supported by the award for compensatory damages.

> 6. *Whether the trial court erred in failing to direct a verdict with regard to the amount of punitive damages awarded as being excessive*

██ In applying the test for excessiveness, this court makes a case-by-case determination, and the award of punitive damages may be reduced if the verdict shocks the conscience of the court or demonstrates that the jurors were motivated by passion or prejudice. *Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox*, 324 Ark. 361, 922 S.W.2d 327 (1996). Hudson Jr. maintains that the award in this case is grossly disproportionate to the gravity of

the dispute, as well as to the conduct of the parties at the time of the occurrence. He claims that, at worst, he was mistaken as to the boundary of his leasehold, but any such mistake was made in good faith. Appellee asserts that Hudson Jr. could not have been mistaken about the boundary lines because the same fifty-six acres had been farmed by appellee and Hudson Sr., for years. He claims that Hudson Jr.'s argument that he made a mistake in good faith is clearly contrary to the evidence.

■■ When reviewing an award of punitive damages, the court considers the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party. *United Ins. Co. of America v. Murphy,* 331 Ark. 364, 961 S.W.2d 752 (1998). Punitive damages are a proper assessment for conduct that is malicious or done with the deliberate intent to injure another. Appellee claims that Hudson Jr.'s "worst" conduct was not a mistake regarding property lines, but rather the physical and verbal attacks he waged against him, and maliciously converting appellee's tractor and disc. Hudson Jr. counters that there is no claim for damage for any of the conduct described herein by appellee, except for the conversion of the equipment. He maintains, that assuming *arguendo,* his actions in having the tractor and disc moved were in bad faith, the punitive-damages award must be limited to those acts, and not any other conduct allegedly directed toward appellee. He claims that appellee sought no damage award for any of the conduct set forth in appellee's argument supporting the punitive-damages award.

■■ Our supreme court has followed a two-step analysis in determining punitive-damages issues: (1) determine whether the award of punitive damages is excessive under state law; and (2) consider the award in light of the due process analysis in *Gore. Routh Wrecker Serv., Inc. v. Washington,* 335 Ark. 232, 980 S.W.2d 240 (1998) (discussing *BMW of North America v. Gore,* 517 U.S.559 (1996)). We have held that when there is an issue of excessiveness, we will review the proof and all reasonable inferences in the light most favorable to the appellee. *Id.* There is no evidence demonstrating that the punitive-damages award "shocked the conscience" of the court or that the jury was motivated by passion or prejudice; accordingly, we affirm on this point.

7. *Whether the trial court erred in failing to direct a verdict with regard to punitive damages because the amount of punitive damages awarded violates the Fourteenth Amendment's due process clause, which imposes on state courts the Eighth Amendment prohibition against excessive fines and cruel and unusual punishment*

Hudson Jr. asserts that this issue is one of first impression in Arkansas, and that it is founded in the recent U.S. Supreme Court decision, *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 524 U.S. 424 (2001). That case held that a jury award of punitive damages is not a finding of fact, but rather an expression of moral condemnation. The Court further stated that requiring a de novo review of the jury award to protect due process concerns is proper.

In *Cooper Indus., supra,* the Court construed the Eighth Amendment to the U.S. Constitution, and set forth three factors to be considered in determining whether a punitive-damages award violates the prohibition against excessive fines and cruel and unusual punishment. They are:

(1) the degree of the defendant's reprehensibility or culpability;

(2) the relationship between the penalty and the harm; and

(3) the sanctions imposed in other cases for comparable misconduct.

*Cooper Indus.*, 524 U.S. at 440. Hudson Jr. asserts that the worst that could have been expected to happen by his actions was that appellee would have to pay the wrecker and storage bill, the initial cost of which was approximately $1100. He maintains that appellee's decision to "stand on principle" and allow those storage fees to accumulate cannot be attributed to any malicious or wrongful intent on his part. Hudson Jr. asserts that appellee chose not to mitigate his damages by claiming the equipment he alleges he owns, but rather to purposely allow his damages to increase, and that these facts cannot justify an award of punitive damages in the amount of $250,000 under the guidelines in *Cooper Indus., supra.*

Appellee addresses each of the factors set forth in *Cooper Indus., supra,* the first being the degree of the defendant's reprehensibility or culpability. He argues that Hudson Jr.'s actions were intentional and premeditated, and that the degree of reprehensibility was great, therefore justifying the amount of punitive damages.

 Appellee also asserts that the second factor, the relationship between the penalty and the harm caused to appellee by Hudson Jr.'s actions, also weighs in his favor. He maintains that the $250,000 punitive-damages award compared to the harassment and torment inflicted upon him, his loss of business and business expectancy, and the conversion of the equipment is not excessive. In *BMW of North America v. Gore, supra,* the U.S. Supreme Court looked at the ratio between the punitive and compensatory damages awards and reversed where that ratio was 500:1, respectively. In the instant case, however, the ratio between the punitive-damages award of $250,000 and the compensatory damages award of $35,000 was approximately 7:1. Appellee cites several Arkansas cases allowing punitive-damages awards to stand where the ratio in question was higher than in the instant case. *See Routh Wrecker Serv., Inc. v. Washington, supra* (finding a 75:1 ratio not to be excessive); *Carter v. Carter,* 311 Ark. 627, 846 S.W.2d 173 (1993) (upholding an award of 17.5:1); *Wortman v. Shipman,* 293 Ark. 253, 737 S.W.2d 438 (1987) (validating a jury award with a ratio of 40:1); *First Nat'l Bank of Brinkley v. Frey,* 282 Ark. 339, 668 S.W.2d 553 (1984) (affirming an award where the ratio was 70:1); and *Ray Dodge, Inc. v. Moore,* 251 Ark. 1036, 479 S.W.2d 518 (1972) (affirming an award where the ratio was 14:1). The approximate 7:1 ratio in this case is well within the acceptable range when reviewing this particular factor under *Cooper Indus., supra,* and also falls within the range most recently set forth by the United States Supreme Court in *State Farm v. Campbell,* 538 U.S. 408 (2003) (holding that in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process).

 Appellee maintains that Hudson Jr. failed to offer any authority that this award was excessive as compared to sanctions imposed in other cases for comparable misconduct, the third factor in *Cooper Indus., supra.* He claims the facts in this case are different from most conversion cases. He cites *Ford Motor Credit Co. v. Herring,* 267 Ark. 201, 589 S.W.2d 584 (1979), where the supreme court held that a punitive-damages award of $17,000, with a ratio of 8.5:1, was not excessive. The court stated that the act of not returning property was a fact question on punitive damages that was properly submitted to the jury. Appellee further contends that the *Ford Motor Credit Co.* case involved neither the

long history of confrontation between the parties nor the severity of conduct on the part of the appellant, as was present in this case. He further supports his argument for the punitive-damages award by reminding the court of Hudson Jr.'s disturbing and culpable actions over the years, which culminated in his actions in this particular case. Under the factors set forth in *Cooper Indus., supra,* we hold that the punitive-damages award does not violate the prohibition against excessive fines and cruel and unusual punishment.

*8. Whether the trial court erred in finding that funds in the hands of a garnishee obtained to pay a judgment debtor's attorney's fees are subject to garnishment by the judgment creditor*

For the final point on direct appeal, appellant Deborah Tidwell Hudson addresses the finding of the trial court that $12,500 in loan proceeds obtained by her were subject to garnishment. Subsequent to the entry of the judgment in the case, Hudson Jr. transferred certain personal property to his wife, in order that she would be able to obtain a loan to pay his attorney's fees. The money was to be paid directly to his attorney. Appellee argued that the loan proceeds were subject to garnishment because they were still in the hands of Deborah Tidwell Hudson at the time the writ of garnishment was served upon her. The trial court agreed and directed her to pay the proceeds to appellee.

Deborah Tidwell Hudson asserts that the law on garnishments is well founded in Arkansas. She states that where a tenant of a building sublets a portion of the premises and assigns the rent due from the sub-tenant to retire a debt, the rent in the hands of the sub-tenant is not subject to garnishment by another creditor or the tenant to whom the funds have been assigned. *See Samstag v. Orr,* 101 Ark. 582, 142 S.W.1127 (1912). Similarly, she states that where there was an agreement by which a defendant sold oil leases to a garnishee under circumstances in which the garnishee was to make payment to the defendant's creditors, but the proceeds were not to be paid to the defendant, it was held that the garnishment did not capture the proceeds of the sale in the hands of the garnishee. *Gibson v. Arkansas So. Prod. Co.,* 230 Ark. 115, 320 S.W.2d 932 (1959) (holding that a garnishment does not reach a debt a garnishee owes to a defendant when the proceeds have been assigned to another).

Deborah Tidwell Hudson maintains that none of the loan proceeds obtained by her were to be paid to Hudson Jr. Therefore, she argues they were obtained in constructive trust, and it was her obligation to pay the attorney's fees, either as trustee or by virtue of Hudson Jr.'s assignment of his rights in the property to her, in consideration of her assumption of the debt to his attorney. She claims that the garnishment of the court does not reach such previous assignments, *see Saunders v. Adcock*, 249 Ark. 856, 462 S.W.2d 219 (1971), and that that portion of the judgment should be set aside.

▪ Appellee argues that appellants have failed to cite any jurisdictional basis through which to include this argument as part of the appeal. He submits that we should not consider this issue at the present time because Deborah Tidwell Hudson, garnishee, is not a party to this action, and because appellants failed to abstract the order and judgment regarding the garnishment as well as the entire garnishment hearing. By virtue of the garnishment proceedings filed in this case under the same case number, along with Deborah Tidwell Hudson's appearance and participation in those garnishment proceedings, she is in fact a party to this action. Furthermore, all relevant pleadings are contained in the record, and we may go to the record to affirm. *Smith v. Aluminum Co. of America*, 78 Ark. App. 15, 76 S.W.3d 909 (2002).

In the alternative, appellee states that Hudson Jr.'s argument must fail as a matter of law. Arkansas Code Annotated section 16-110-101 states in pertinent part:

> [t]he plaintiff in a civil action . . . . may have an attachment against the property of the defendant . . . . as a security for the satisfaction of such judgment as may be recovered . . . . (1)(A) [i]n an action for the recovery of money, where the action is against a defendant who . . . . (vii) [h]as sold, conveyed, or otherwise disposed of his property, or suffered or permitted it to be sold, with the fraudulent intent to cheat, hinder, or delay his creditors.

Ark. Code Ann. § 16-110-101 (2002). Additionally, Ark. Code Ann. § 16-110-102(a)(1) (2002) provides in pertinent part that, "whenever, in a civil action, the plaintiff shall have reason to believe that any other person is indebted to the defendant or has in his hands or possession goods or chattels, moneys, credits, and

effects belonging to the defendant, the plaintiff may sue out a writ of garnishment."

■ An appellate court will not reverse a trial court's finding of fact unless it is clearly erroneous. *Troutman Oil Co. v. Lone*, 75 Ark. App. 346, 57 S.W.3d 240 (2001). A finding of fact is clearly erroneous when, although there is evidence to support it, the appellate court is left, on reviewing the entire evidence, with the firm conviction that a mistake has been made. *Burmeister v. Richman*, 78 Ark. App. 1, 76 S.W.3d 912 (2002).

Appellee maintains that whether the funds were assigned to Hudson Jr.'s counsel before the writ of garnishment was served on Deborah Tidwell Hudson is a question of fact that will only be reversed if the trial court clearly erred. Hudson Jr. testified in his deposition in aid of execution of the judgment that he had not been paid for the transfer of property to his wife and that she owed him $12,500. Appellee's counsel had a writ of garnishment served on his wife while the deposition was still proceeding. There was no contradictory evidence that any of the funds were paid before the writ of garnishment was served. Deborah Tidwell Hudson testified at the hearing that one of the checks to Hudson Jr.'s counsel was "probably after September 7th when I was served with the writ of garnishment . . . . [t]hat one would be for $6,000."

■ Appellee maintains that it is clear that the trial court did not err in directing the garnishee to pay these funds to him. Without adequate proof that the money was assigned to Hudson Jr.'s counsel for payment of his debt prior to the writ of garnishment being served, we must affirm the trial court's decision. That is where the facts of the instant case differ from those cited by Hudson Jr. In *Samstag* and *Gibson, supra*, there were formal assignments to the other creditor before the garnishment of the funds in question. Here, Hudson Jr. offered no proof that the funds were formally assigned to his counsel. We affirm.

*Cross-Appeal*

*Whether the trial court erred in issuing the remittitur*
*on punitive damages*

■ This court has held that generally, when a plaintiff elects to accept a reduction in his verdict after the trial court has

found the verdict to be excessive, he is bound by that decision and may not appeal. *See Farmers & Merchants Bank v. Deason*, 25 Ark. App. 152, 752 S.W.2d 777 (1988). However, a plaintiff's election to accept the trial court's conditional order by consenting to the remittitur does not bar the plaintiff from cross-appealing when the defendant appeals. *Id.* A remittitur is within the inherent power of the court if an award is grossly excessive or appears to be a result of passion or prejudice. *McNair v. McNair*, 316 Ark. 299, 870 S.W.2d 756 (1994). The reviewing court will reverse a remittitur if the punitive-damages award is supported by evidence and does not shock the conscience of the court. *Id.*

When considering the issue of remittitur of punitive damages, the appellate court reviews the issue de novo. *Routh Wrecker Serv., Inc. v. Washington, supra.* The reviewing court considers the extent and enormity of the wrong, the intent of the party committing the wrong, all of the circumstances, and the financial and social condition and standing of the erring party. *Id.* Where, in light of the evidence, the jury could have concluded that an appellant displayed a conscious indifference for appellee and that his acts were done with the deliberate intent to injure, the amount of punitive damages will not shock the conscience of the court. *Ellis v. Price*, 337 Ark. 542, 990 S.W.2d 543 (1999). The reviewing court can restore the jury's verdict or reduce it. *Morrison v. Lowe*, 274 Ark. 358, 625 S.W.2d 452 (1981).

Appellee submits that the $250,000 punitive-damages award against Hudson Jr. was not grossly excessive and was not the result of passion or prejudice. In *O'Neal Ford, Inc. v. Davie*, 299 Ark. 45, 770 S.W.2d 656 (1989), the supreme court reversed a trial court's order of remittitur because the trial judge had stated that he was only "mildly surprised by the amount." In the instant case, the trial judge stated that he considered the punitive-damages award "a little excessive." Appellee maintains that this neither meets the "grossly excessive" standard nor "shocks the conscience of the court." We hold that this is much more like the "mildly surprised" comment made by the judge in *O'Neal Ford, supra*, and in light of the applicable standard, it justifies a reversal of the remittitur. We therefore reverse on cross-appeal, and remand for the trial court to reinstate the original punitive-damages award of $250,000.

Additionally, on August 6, 2002, appellee filed a motion for $585 in costs associated with his submission of a supplemental abstract and addendum. We hereby grant the motion in the amount of $100.

Affirmed on direct appeal; reversed and remanded on cross-appeal.

GRIFFEN and CRABTREE, JJ., agree.