For the reasons given, I would reverse the ruling of the chancery court and dismiss the case.

Dr. James Y. SUEN *v.* Kenneth GREENE

96-702                                          947 S.W.2d 791

Supreme Court of Arkansas
Opinion delivered July 11, 1997

*Shaw, Ledbetter, Hornberger, Cogbill & Arnold,* by: *Charles R. Ledbetter,* and *Friday, Eldredge & Clark,* by: *Philip Malcom* and *Robert S. Shafer,* for appellant.

*Robert S. Blatt; Morgan & Weisbrod,* by: *Les Weisbrod, Michael S. Box,* and *William A. Newman;* and *The Keenan Law Firm,* by: *Don C. Keenan,* for appellee.

RAY THORNTON, Justice. This is a medical malpractice case. Mr. Kenneth Greene, appellee, was injured during surgery performed by Dr. James Y. Suen, appellant, in November of 1986. He filed this complaint in July of 1990, and the matter was tried before a jury in Crawford County in a fifteen-day trial, which lasted from September 23 to October 13, 1995. The jury returned a verdict absolving appellant of medical malpractice. On appellee's motion, the trial court granted a new trial, and appellant appeals from that order.

The record in this case consists of thirty-four bound volumes containing more than 7,400 pages together with a box of exhibits. We have reviewed the trial court's decision to grant a new trial because of side-bar comments by appellant's counsel, its determination that it had erred in not striking the testimony of one expert witness, and that it had erred in refusing to declare a mistrial after another witness for appellant gave unresponsive answers in testimony. We have concluded that these irregularities do not meet the standard set forth in Ark. R. Civ. P. 59; that is, they do not "materially affect the substantial rights of [the] party." Ark. R. Civ. P. 59(a); *Diemer v. Dischler,* 313 Ark. 154, 852 S.W.2d 793 (1993). Put another way, the irregularities complained of do not show a reasonable possibility of prejudice to appellee's right to a fair trial. *Nazarenko v. C.T.I. Trucking Co.,* 313 Ark. 570, 856 S.W.2d 869 (1993). We hold that granting a new trial on these grounds was a clear abuse of discretion and we reverse and dismiss.

In granting appellee's motion for new trial, the trial court determined (1) that it had committed error in failing to strike testimony of Dr. Ossami Al-Mefty, one of appellant's expert witnesses; (2) that it had committed error in failing to declare a mistrial for unresponsive and prejudicial responses of Dr. William Friedman, an expert medical witness of appellant's; and (3) that prejudice to appellee's right to a fair trial resulted from appellee's many objections to "side-bar comments" by appellant's trial counsel. Rule 59(a) of the Arkansas Rules of Civil Procedure provides:

> A new trial may be granted to all or any of the parties and on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party:
> (1) any irregularity in the proceeding or any order of the court or abuse of discretion by which the party was prevented from having a fair trial;
> (2) misconduct of the jury or prevailing party[.]

Ark. R. Civ. P. 59(a)(1)–(2).

■ We have held that, while a trial court's discretion is much broader where the question is whether a jury verdict is supported by a preponderance of the evidence, still, its discretion when granting a new trial under other provisions of Rule 59 should not be disturbed absent manifest abuse of discretion, or "discretion improvidently exercised." *Ford Motor Co. v. Nuckolls*, 320 Ark. 15, 894 S.W.2d 897 (1995). The party moving for a new trial under these provisions must show that his rights have been materially affected by demonstrating that a reasonable possibility of prejudice resulted from the misconduct. *Diemer v. Dischler, supra.*

With this rule in mind, we first examine the court's order finding that the conduct of Mr. Malcom, attorney for appellant, in making side-bar comments materially affected the substantial rights of the appellee, and prevented the appellee from having a fair trial. The record has been abstracted to include every instance of alleged unresponsiveness of witnesses to questions by appellee's counsel, and every instance of side-bar comments in both the direct and redirect examinations. We have reviewed all these exchanges, and we observe that the effort to present the qualifica-

tions of Dr. Friedman as an expert fairly reflects the general nature of the "unresponsive answers" and side-bar comments with which the record is replete. A few examples follow:

Mr. Malcom [appellant's attorney]: Doctor, if you could, I'd like you to visit with us a moment. Have you continued through the years, both when you've been [in] academics and when you've been in private practice, with lecturing or teaching or conducting seminars? I want to cover first the United States with regard to specific areas that would relate to his case.

MR. MORGAN: Your Honor, I object to the side-bar remarks throughout the question. He can ask the question without the side-bar remarks.
MR. MALCOM: I'll rephrase the question.

\* \* \*

MR. MALCOM: Can you tell the ladies and gentlemen of the jury, and I know [there are] references in your curriculum vitae, but please go ahead and tell us what kind of lecture you conduct.
MR. MORGAN: Your Honor, I object to the side-bar remark.
THE COURT: Yes, let's just ask the questions.

\* \* \*

MR. MALCOM: Just give us [a] general overview. You don't have to cover everything specifically.
DR. FRIEDMAN: Well, I have tried to lecture at major meetings only, because other than that I don't have time to just go to any meeting.
MR. MORGAN: Objection, nonresponsive, Your Honor.
THE COURT: Yes, let's just tell us what you've done.

\* \* \*

MR. MALCOM: I thought we'd save some time. Please go to it [the curriculum vitae].
DR. FRIEDMAN: And so we'll do that, I guess.
MR. MORGAN: Objection to side-bar remark.
THE COURT: Sustained. You just need to go to your curriculum [vitae]. That's what it's here for.
DR. FRIEDMAN: I'm going as fast as I can, Your Honor.
MR. MORGAN: Objection to the side-bar, Your Honor.
THE COURT: Yes. Be responsive to questions.

MR. MORGAN: I would ask the Court to instruct the witness just to answer the questions and leave the side-bar remarks off.

THE COURT: Yes. Just answer questions, Doctor.

DR. FRIEDMAN: Okay.

MR. MORGAN: I object to the okay, Your Honor.

THE COURT: Yes. That'll be sustained.

\* \* \*

MR. MALCOM: Continue on, sir, if you could, and we'd like you to just briefly hit some high points?

MR. MORGAN: Objection to the side-bar, Your Honor.

THE COURT: Sustained.

\* \* \*

MR. MALCOM: Let's go forward a few pages and let's go to the early 1980's. Can you get on page 15 with me?

DR. FRIEDMAN: Yeah.

MR. MALCOM: This is nine years later, 1981.

MR. MORGAN: Objection. Side-bar remark.

THE COURT: Sustained.

These few examples from the abstracted testimony serve as illustrations of strictly enforced rules of procedure, and we do not find any irregularity that would materially affect the substantial rights of appellee, by preventing the appellee from having a fair trial.

The record shows that the trial court was firm and decisive in maintaining tight control over the proceedings. Near the end of the fourteenth day of the trial, the following exchange occurred:

THE WITNESS: Your Honor, can I have the operative report in front of me, please?

THE COURT: I think that's reasonable.

MR. MORGAN: Let me show you what has been marked as exhibit. . . well, let me ask you this first and then I will. . .

MR. MALCOM: We have the exhibits that I got yesterday, Your Honor, I can get them to give them to him.

MR. MORGAN: Your Honor. . .

THE COURT: Mr. Malcom. . .

MR. MALCOM: Yes.

THE COURT: Mr. Malcom, if you interrupt again or walk in front of people again I'm going to remove you from the

courtroom. You have interrupted his examination at least five times. You know that's not the way it's done, don't you?

MR. MALCOM: Your Honor, I've been in the court and a lawyer for 20 years and I know a lot of things, the way they're not done.

MR. MORGAN: Your Honor, I object to that remark.

THE COURT: Mr. Malcom, you are excluded from the courtroom for the rest of this witness. Mr. Ledbetter will have to take over.

Mr. Malcom left the courtroom, and after conference, Mr. Ledbetter persuaded the trial court to allow him to return on the condition that he only be permitted to make objections.

As a ground for a new trial, the order of the trial court does not find any misconduct of counsel, but suggests that his frequent "side-bar" comments violated appellees right to a fair trial. We observe that most of Mr. Malcom's "side-bar" comments to which appellee objected were casual remarks designed to expedite the proceedings or were referrals to previous testimony.

■ This court has held that the misconduct of the prevailing party includes the misconduct of the prevailing party's attorney. *Hacker v. Hall*, 296 Ark. 571, 759 S.W.2d 32 (1988). This case can be compared to *Alexander v. Chapman*, 289 Ark. 238, 711 S.W.2d 765 (1986), where we held that a new trial should have been granted because prejudice resulted from the cumulative effect of opposing counsel's conduct. In that case, counsel did not cease his unreasonable courtroom conduct, even though he was repeatedly admonished and the trial court repeatedly sustained objections to his leading questions.

■ The conduct in this case does not rise to the level of *Alexander v. Chapman*. It is clear from a review of the abstract that in this case counsel for the plaintiff and the defendant were vigorously and professionally advocating the interests of their clients. The trial court maintained a firm control over the proceeding and we are unable to find any reasonable possibility of prejudice against appellee's rights to a fair trial resulting from the actions of appellant's attorney. Absent any showing that counsel's conduct prevented appellee from having a fair trial, the trial court's action in ordering a new trial for that reason was a manifest abuse of discretion.

■ We next consider whether the trial court abused its discretion in setting aside the jury verdict and ordering a new trial on the ground that its own errors in the conduct of the trial prevented appellee from having a fair trial. We first address the issue whether the trial court committed error which deprived appellees of a fair trial by failing to strike Dr. Ossama Al-Mefty's testimony. As in the examples referred to during the qualification of Dr. Friedman as an expert, it appeared that appellee's attorney, through frequent objections, most of which were sustained by the court, insisted upon great precision in phrasing questions and answers. While this high standard of precision resulted in numerous objections, we have not found any examples where the answers provided by Dr. Al-Mefty, or the rulings of the trial court constituted irregularities in the proceedings which prevented appellee from having a fair trial. However, appellee asserts that the cumulative effect of all of appellee's objections may have had that result. We cannot agree with that argument. It is apparent that in many instances Dr. Al-Mefty, whose primary language is not English, was seeking to answer fully and completely. The trial court imposed sufficient discipline upon his answers to ensure that the appellee was not prevented from having a fair trial because of Dr. Al-Mefty's tendency to ramble. While Dr. Al-Mefty exhibited some reluctance to give answers during cross examination, the trial court guided and prodded with the result being that the appellee ultimately obtained an answer to each question.

■ We have stated that "[a] verdict may not be set aside arbitrarily and without reasonable cause." *Martin v. Blackmon*, 277 Ark. 190, 195, 640 S.W.2d 435,437 (1982); see also *Big Rock Stone & Material Co. v. Hoffman*, 233 Ark. 342, 344 S.W.2d 585 (1961). Granting a new trial on the basis that a witness was generally "nonresponsive" is arbitrary and unreasonable. It invites abuse and threatens the right of trial by jury. In practical effect it permits the trial court to substitute its view of the evidence for that of the jury. *See Razorback Cab of Fort Smith v. Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993).

■ It is well established that the trial court should not substitute its view of the evidence for that of the jury. There is no disagreement that the grounds for granting a new trial (a) because

of the conduct of appellee's counsel, and (b) because the trial court decided it committed error in not striking the testimony of Dr. Al-Mefty did not reflect a material irregularity which prevented appellee from having a fair trial. Therefore, the decision of the trial court in ordering a new trial on those grounds was a manifest abuse of discretion.

We now turn to the trial court's determination that it erred in refusing to order a mistrial because Dr. William Friedman's unresponsive answers and side-bar comments should have resulted in a mistrial, and that the trial court's failure to order a mistrial was a substantial irregularity that prevented appellee from having a fair trial.

In addressing the issue of whether the comments by Dr. Friedman prevented appellee from having a fair trial, we note that much of the dispute centered upon the standard of care, and testimony by a witness for the plaintiff that a "tin-foil" test should have been used. Not only Dr. Friedman, but Dr. Graves Hernsberger, Dr. Edgardo Angtuaco, and Dr. Paul Wills, as well as Dr. Suen and Dr. Al-Mefty testified that Dr. Suen performed the surgery according to the appropriate standard of care. After qualifying as an expert witness, Dr. Friedman testified that if he had been handling the operation he would have followed similar procedures to those employed by the appellant. He stated that the standard of care used by appellant was the "standard of care for ENT surgeons in Little Rock, Arkansas in 1986." This testimony was eventually stricken and the jury instructed to ignore it. No prejudice to appellee resulted from this ruling.

Dr. Friedman was abrasive while on the witness stand; at one point he testified with reference to the "tin-foil" test "that a lie had been perpetrated on this court" by an expert witness for appellee. Appellee moved that the testimony be stricken or in the alterative for a mistrial. The testimony was stricken and the jury was instructed to disregard it. Several expert witnesses for appellant agreed that a "tin-foil" test was not referenced in the literature. It is clear that Dr. Friedman was unresponsive and resistant to answering hypothetical questions which were predicated upon assumptions that he could not accept as correct and the trial court

struck his testimony. After Dr. Friedman's entire testimony had been stricken, appellee never renewed his motion for a mistrial, at that point or thereafter, and when appellant moved for a mistrial, appellee responded: "I believe that the court was justified in the position that it took." The trial court utilized an extreme remedy in striking all of Dr. Friedman's testimony, and appellee agreed that the matter was properly handled. We find no reasonable possibility that appellee was prejudiced, or prevented from having a fair trial because of Dr. Friedman's testimony, all of which had been stricken. The trial court did not commit an error in failing to order a mistrial.

"A mistrial is a proceeding that has miscarried and the consequence is not a trial." *Midwest Line Co. v. Independence County Chancery Court*, 261 Ark. 695, 702, 551 S.W.2d 537, 540 (1977). "A new trial is defined by statute as a reexamination in the same court of an issue of fact after a verdict by a jury or a decision by the court." Id. at 701-02, 551 S.W.2d at 540. It seems clear that the decision by the trial court during the trial that Dr. Friedman's unresponsive answers and side-bar comments did not call for a mistrial was correct.

The trial court exercised great discipline and required strict compliance with rules of procedure. When confronted with difficult decisions, such as striking appellant's main expert witness, removing appellant's counsel from the courtroom, and sustaining objections to, and striking portions of the testimony of other witnesses for the appellant, the court reacted in such a way as to ensure that appellee received a fair trial.

Because we find in this case no reasonable possibility that appellee was deprived of a fair trial by reason of the conduct of appellant's attorney, or by the actions of the trial court in failing to grant a mistrial, and failing to strike Dr. Al-Mefty's testimony, we conclude that the order of the trial court granting a new trial on those grounds was a manifest abuse of discretion, and reverse and dismiss this appeal. Since we uphold the jury verdict and overrule the grant of the motion for a new trial, the venue issue raised in the alternative is moot.

Reversed and dismissed.

NEWBERN, GLAZE, and IMBER, JJ., dissent.

TOM GLAZE, Justice, dissenting. This case is one where the trial court granted a new trial, and this court's standard is simple — in granting the new trial, did the judge manifestly and clearly abuse his discretion by acting improvidently or thoughtlessly without due consideration? The majority court says yes, but if the majority was right, based upon the record before us now, a judge could never order a new trial.

In pertinent part, Rule 59(a) provides that a new trial may be granted (1) for any irregularity in the proceeding which caused the party from having a fair trial, or (2) for jury or party misconduct. Here, as the majority court concedes, the defendant's medical expert witnesses, Doctors Sam Al-Mefty and William Friedman, were reluctant to answer questions on cross-examination, and indeed, Friedman openly and defiantly refused to respond to questioning. Both of these doctors had willingly and convincingly given testimony on direct examination that not only was designed to establish the defendant's, Dr. James Y. Suen's, competence (lack of negligence) in his performance of plaintiff Kenneth Greene's surgery, but also was designed to impeach and discredit Greene's expert witnesses, Doctors Martin Lazar and Roger Rose. As the majority opinion relates, "Dr. Friedman was unresponsive and resistant to answering hypothetical questions which were predicated upon assumptions he could not accept as correct."

Most important, Dr. Friedman, in challenging Greene's case and medical experts, accused Dr. Rose of "inventing a tin-foil test for this case," and when referring further to the test, told the jury, "I feel a terrible lie has been perpetrated in this court." After this last Friedman remark, the trial judge recessed and met with counsel in conference to study and consider his options in minimizing the remark's prejudicial impact on the jury. At defense counsel's urging, the judge rejected Greene's motion for mistrial, and instead framed a cautionary instruction by which he informed the jury that Dr. Friedman was wrong in making his remark that a lie had been perpetrated, and the jury should not consider it. The judge's instruction was to no avail because Friedman, on further

questioning by plaintiff's counsel, refused to answer plaintiff's hypothetical questions that tended to place blame on Dr. Suen for plaintiff's injury. He said, "I can't make those assumptions because it's too hard, given what I know."

While the trial judge instructed the jury that Dr. Friedman's testimony "will be stricken from the record" and directed the jury not to consider it, this court has repeatedly reversed cases because the "metaphorical or proverbial bell" had been rung and prejudice ensued from the improper remarks. *See Balentine v. Sparkman*, 327 Ark. 180, 937 S.W.2d 647 (1997); *Synergy Gas Corp. v. Lindsey*, 311 Ark. 265, 843 S.W.2d 825 (1992). Here, if any "lie" or fraud occurred in this case, that was within the province of the jury, not for Friedman, to decide.

In addition to the pernicious remarks made by Dr. Friedman, the trial judge had to decide, when faced with Greene's new trial motion, if Greene had been prevented from having a fair trial because of Al-Mefty's and Friedman's misconduct by refusing to answer questions on cross-examination. In reviewing the trial judge's ruling that Greene had been denied a fair trial and was entitled to a new trial, it becomes this court's duty to determine if the judge acted improvidently or thoughtlessly without due consideration. This court further is guided by the controlling principle that a showing of a judge's abuse of discretion in this respect is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Young v. Honeycutt*, 324 Ark. 120, 919 S.W.2d 216 (1996). And finally, this court gives deference to the trial judge in these new-trial matters because the judge has heard all the testimony and was in a position far superior to ours to know whether the proof was so nearly balanced that the misconduct of a witness and juror might have tipped the scales one way or another. *Moody Equip. & Sup. v. Union Nat'l Bk., Adm'r*, 273 Ark. 319, 619 S.W.2d 637 (1981). As Justice George Rose Smith stated in *Moody*, "It is fundamental that the latitude of the trial judge's discretion increases proportionately as the situation presents to him a question that cannot equally be presented to us by the printed record."

Here, Dr. Friedman's credentials are impeccable, and the importance of his testimony cannot be overstated. Again, he not only served to bolster Dr. Suen's theory of the case that Suen did not commit malpractice, Friedman also attacked the medical testimony and opinions given by Greene's doctors. When he refused to answer questions on cross-examination, plaintiff's counsel was denied any opportunity to test Friedman's opinions and other damaging remarks.

Even defense counsel recognized the import of Friedman's appearance and testimony before the jury when they, too, moved for mistrial after the trial judge struck Friedman's testimony. In this connection, defense counsel argued that, without Dr. Friedman's testimony, defendant was deprived of a fair trial. Although defense counsel was likely correct in this regard, the trial judge in granting plaintiff a mistrial recognized the corresponding effect and prejudice to plaintiff when plaintiff was denied the opportunity to test Friedman's direct testimony. In these circumstances, the trial judge was clearly in the best position to hear the defendant's expert witnesses and to observe the impact of their continuing misconduct before the jury. The trial judge made a fair decision and should be affirmed.

In short, the majority is in an impossible position to weigh and determine the impact Friedman's remarks had on the jury; nor is this court positioned to balance the testimonies of all the expert witnesses and how the trial's outcome could have been affected by Friedman's testimony after it was stricken. To ask the jury to forget and not consider such prejudicial testimony was a worthless admonition. To his credit, the trial judge reached that conclusion when confronted with the issue on Greene's new-trial motion.

In conclusion, I note that the majority mentions that Greene did not renew his motion for mistrial after Friedman's testimony was stricken. However, I want to make it clear that the majority does not conclude Greene waived his objections, nor does it cite cases in support of such an idea. Greene twice moved for mistrial, and twice his motions were denied. He was not required

again to move for mistrial. The majority reference in this respect is irrelevant.

For the foregoing reasons, I would affirm.

NEWBERN and IMBER, JJ., join this dissent.