ROBERT J. GLADWIN, Judge
First Government Lease Company ("FG") and Paul Graver, sole owner and operator of FG, appeal the Scott County Circuit Court's judgment against Graver in the amount of $258,195 in general damages and $1.5 million in punitive damages and the order of May 11, 2017, denying appellants' posttrial motions for judgment notwithstanding the verdict, new trial, remittitur, and findings of fact and conclusions of law. On appeal, appellants argue that the circuit court erred in (1) its analysis and ruling on their motion to dismiss; (2) refusing to continue or delay the start of trial; (3) allowing punitive damages; (4) denying appellants' motion for new trial; and (5) striking appellants' counterclaims. We affirm.
I. Procedural History
Appellee Northwest Scott County Volunteer Fire Department ("VFD") borrowed $166,500 from FG to buy fire trucks, although the amount of money and number of trucks are disputed. When VFD failed to make payments, FG filed a replevin complaint in circuit court alleging that VFD had violated their "Lease Purchase Agreement" and seeking recovery of seven vehicles, which FG alleged were used as collateral for the loan, interest, and attorney's fees. VFD responded that *475 FG had already repossessed the vehicle financed through their agreement and filed a counterclaim against FG based on fraud and the Arkansas Deceptive Trade Practices Act ("DTPA").
FG dismissed its replevin complaint without prejudice on June 2, 2014. The circuit court filed a June 16 order noting that VFD's counterclaim was still pending. Trial was set for VFD's counterclaim on December 18-19, with a pretrial hearing set on December 11. The scheduling order filed July 21 included an October 30 discovery deadline.
After a hearing held November 13, an order filed December 1 required that FG provide all supplemental discovery responses and a list of exhibits and witnesses by November 24, and all of FG's witnesses were to be made available for deposition between November 25 and December 5. In a separate order, the circuit court denied FG's motion to reconsider its ruling that Graver appear in Arkansas to be deposed and noted that the rulings from the November 13 hearing were imposed on FG as sanctions for failure to answer interrogatories and requests for production of documents.
FG then filed a petition for writ of prohibition with the Arkansas Supreme Court on December 4, and Graver did not appear for deposition on December 5. The petition for writ of prohibition was denied, and the formal order was filed in the circuit court on December 10. On that date, VFD filed a motion to implead Graver because Graver had represented himself as "d/b/a FG" on numerous occasions. At the pretrial hearing on December 11, the trial was continued to August 20-21, 2015. The resulting order, filed February 5, 2015, granted the motion to implead Graver and found that FG did not produce Graver for deposition in violation of the circuit court's order. The circuit court reserved the right to strike FG's answer, and Graver was ordered to reappear for deposition on March 25, 2015. The circuit court found that Graver could not testify as a witness in the case unless called by VFD, and evidence not provided to VFD prior to November 13, 2014, was excluded. A December 22, 2014 scheduling order required any pretrial motions to be filed at least fifteen days prior to the pretrial hearing set for August 13, 2015.
On January 12, 2015, VFD filed an amended counterclaim, which added a complaint against Graver as a third-party defendant. VFD alleged that Graver was liable for FG's conduct and claimed that appellants had committed fraud, conversion, and usury and had violated the DTPA-which included a claim for punitive damages. FG filed a motion to dismiss VFD's counterclaim for failure to state a claim. See Ark. R. Civ. P. 12(b)(6) (2017).
On March 23, two days before Graver's scheduled deposition, he filed a notice of removal in the United States District Court and a separate notice in the circuit court. Accordingly, Graver did not appear for deposition on March 25. On November 12, the federal court remanded for lack of jurisdiction, finding that FG was not a registered business entity and was in fact Paul Graver acting as a sole proprietorship; therefore, Graver was the plaintiff in the circuit court case, and he was not entitled to removal.
On November 30, VFD filed a motion for emergency ex parte relief alleging that appellants took two vehicles from VFD and sold them. The vehicles were the objects of the parties' litigation, and appellants received $179,000 more than the amount of the loan. VFD alleged that appellants were "currently trying to repossess the remaining vehicles, which would effectively render most of the northwestern portion of Scott County without adequate *476 fire protection." VFD further alleged that since appellants initially filed their complaint, appellants' agents had broken into the local fire department and taken a vehicle. VFD asked for an order directing appellants to cease all further collection and repossession efforts. The circuit court granted ex parte relief on December 2, 2015.
VFD filed a motion for contempt and temporary attorney's fees on January 4, 2016, claiming that after filing this action, appellants filed two cases in Illinois regarding the same matter. One Illinois case was dismissed, but the second case was still pending. VFD asked for attorney's fees for having to defend these cases and argued that appellants were trying to cause VFD financial hardship.
By order filed April 6, 2016, the circuit court denied appellants' motion to dismiss VFD's amended counterclaim. The court found that the issues were waived because appellants had not moved to dismiss the original counterclaim, which was no different from the amended pleading except that Graver was named. Because the issues were not raised against the original counterclaim, Graver waived those arguments. The circuit court also found that the claim for fraud should survive the motion to dismiss under Rule 12(b)(6). The circuit court further denied the dismissal request related to the DTPA or conversion because the case had been pending for over three years with most of the delay caused by appellants' failure to answer discovery and their erroneous attempt to remove the case to federal court. Finally, the circuit court denied VFD's motion for contempt and temporary attorney's fees. A new scheduling order provided that the trial was reset for August 18-19, 2016, and a pretrial hearing was scheduled for August 11, 2016. The parties were reminded that all pretrial motions should be filed at least fifteen days before the pretrial hearing.
On May 3, 2016, appellants filed an amended answer with counterclaims based on fraud and breach of contract. Appellants claimed the affirmative defenses of laches, unclean hands, detrimental reliance, and the Illinois Credit Agreement Act, "which bars all tortious causes of action that are 'in any way related' to a credit agreement."
VFD filed a motion to dismiss appellants' counterclaims, citing the circuit court's February 5, 2015 order that excluded evidence not provided before November 13, 2014, and excluding Graver as a witness unless called by VFD. VFD also argued that it was clear from the circuit court's oral instruction prior to the latest scheduling order that no further pleadings would be tolerated and that this matter would proceed to trial under the prior pleadings. VFD also argued that appellants' fraud claim was barred by the statute of limitations because the matter had been pending since 2012, and the May 3, 2016 fraud allegation was appellants' first attempt to sue VFD for any cause of action based on fraud or deceit, and VFD claimed that all of appellants' counterclaims were not timely filed.
Appellants filed a motion for partial judgment on the pleadings on August 1, 2016, claiming entitlement to judgment for breach of contract based on VFD's admission that it had failed to make payments. VFD filed a motion to strike because appellants' motion for partial judgment was filed after the deadline set forth in the circuit court's scheduling order. At the pretrial hearing, the circuit court ordered that appellants were prohibited from testifying or presenting any other witnesses because they had failed to produce witnesses for deposition; the written order *477 was filed on September 8, 2016.[1] In the same order, the circuit court struck appellants' claims against VFD.
Following the pretrial hearing, appellants filed a notice of interlocutory appeal on August 15, 2016, appealing the circuit court's order striking their counterclaims.[2] After the Arkansas Supreme Court denied appellants' petition for emergency stay pending appeal, and the circuit court filed its order of September 8, 2016, appellants filed an amended notice of interlocutory appeal on October 10, 2016.[3]
II. Jury Trial
The scheduling order filed August 24, 2016-setting the jury trial for February 22-23, 2017, and a pretrial hearing on February 9, 2017-remained in effect, despite appellants' attempts at an interlocutory appeal.[4] However, on the first day of the scheduled jury trial, neither Graver nor his counsel appeared. The circuit court elected to proceed after contacting counsel and determining that counsel had mistakenly marked his calendar.
VFD presented its case that it had borrowed $90,000 from FG after contacting Graver. VFD alleged that it already had $170,000 to pay toward a fire truck that cost $260,000. VFD was provided the "Lease Purchase Agreement" from FG, and Donnie Adkins, the fire chief, testified that the document was illegible. He said that he had trusted Graver, that $90,000 had been handwritten at the top of the agreement, and that nothing else on the agreement had been filled in. He was told that he had to sign the agreement to get the check. He said that he signed the document and that Graver "filled out the rest"; although, when the document was faxed to him, it had not been filled out, and they had never discussed the interest amount of $76,500. Adkins also described Graver's hatefulness and their having to hide the smaller truck to prevent repossession after Graver had sold the larger truck for $182,032. Adkins also said that the smaller truck was repossessed after the circuit court had issued an ex parte order to cease and desist any repossessions. He described how appellants' agents had broken into the fire station by pulling out ductwork from the outside air units.
At the close of the evidence, the circuit court instructed the jury, and VFD's counsel gave its closing argument. The circuit court then introduced appellants' counsel, who had just arrived, and appellants made their closing argument. After VFD's reply argument was given, the jury retired to deliberate. Before the jury returned with its verdict, appellants' counsel moved for *478 directed verdict and "JOV at this time based on the insufficiency of the evidence." The circuit court denied the motion. Counsel renewed the motion, and it was denied. The following colloquy then occurred:
APPELLANTS' COUNSEL : Okay. Also, ask the court for a mistrial due to the unfairness of my client not being able to put on any sort of case and not being here and having a chance to cross examine the witnesses.
COURT : And whose fault is that, sir?
APPELLANTS' COUNSEL : It's my, that is mine, Your Honor.
COURT : Okay. This case has been set for months. There was a Notice sent. We've had several pretrial hearings. We had a pretrial on February 9 in which everyone was here including you at which time we discussed any motions pending. There were none. I asked everybody if everybody was ready and said see you on the 22nd. So, I don't see the fact that you put it on your calendar wrong and didn't get here till 11:51 as excusable neglect or reason to grant a continuance or a mistrial. That's denied.
APPELLANTS' COUNSEL : Okay. And then, finally, I would ask for a new trial pursuant to Rule 59(a)(1) for the same reasons that my clients can't cross examine any witnesses and the inherent unfairness that came from it.
COURT : That's due to fault of counsel. Denied. Okay. Bring them in.
The jury returned with a verdict for VFD against Graver in the amount of $258,195 in general damages and $1.5 million in punitive damages. After the jury was excused, appellants moved for judgment notwithstanding the verdict as follows:
APPELLANTS' COUNSEL : [A]s to punitive damages because of the fourth cause of action contains [VFD's] complaint only one, I believe, asks about punitive damages which you specifically don't without a specific jury instruction, jury verdict form, it's impossible to know on which cause of action they actually found for [VFD] and, also, on which one they awarded punitive damages.
COURT : Well, sir, there were no objections to the instructions given to the jury and before the jury was dismissed that objection was not raised either when they might could have been instructed further and sent back to do so, so, it is denied and waived as far as I'm concerned, sir.
APPELLANTS' COUNSEL : Okay, and then I'm also asking for, remittitur on the punitive damages as well for the fact that it's impossible to know what it was based on and what cause of action they are counting on.
COURT : That is denied. Anything else? If not, we stand adjourned.
III. Posttrial Motions
A judgment was filed against Graver in the amount of $1,758,195 plus interest at 6 percent per annum until paid. Appellants filed a motion for judgment notwithstanding the verdict, or in the alternative for a new trial, asking that the directed-verdict motions made at trial be granted or that a new trial be granted. Appellants argued that a new trial was warranted because of their counsel's "calendaring mistake." Appellants also sought a new trial based on excessive damages, error in the assessment of the amount of recovery, and the use of a general-verdict form, which did not capture the jury's intentions and link the punitive-damages award to a specific cause of action that allows for punitive damages.
*479 The circuit court denied appellants' motions by order filed April 11, 2017. Appellants filed a motion for findings of fact and conclusions of law for the order denying their posttrial motions. The circuit court filed an order on May 11, 2017, with specific findings and conclusions, denying appellants' motions for JNOV, new trial, and remittitur. The circuit court's order states:
1. The court finds that [FG] and [Graver] failed to make a motion for a directed verdict at the conclusion of the evidence presented and thus waived any right to request a JNOV.
2. The failure of [FG], [Graver], or their attorney Matthew Campbell to appear on date of trial due to a "calendaring mistake" is not the type of "accident or surprise" contemplated under ARCP 59(a)(3).
3. There was evidence presented to the jury that persons acting on behalf of [FG] and [Graver] broke into a building owned by [VFD] and took possession of and sold a vehicle and equipment belonging to [VFD].
The court also finds that the undisputed evidence presented to the jury was that [FG] and [Graver] had received approximately $278,000 from the sale of two separate vehicles and equipment owned by [VFD] for a debt of approximately $90,000 and had not accounted for any expenses incurred nor made any effort to return to [VFD] any of the excess monies which were received.
....
5. The court finds that all conclusions of law were set forth in the instructions given to the jury at the conclusion of the evidence. Neither [FG] nor [Graver] failed to object [sic] to any jury instructions given by the court as required by ARCP 51.
6. Finally, findings of fact and conclusions of law are not required under ARCP 52 prior to entry of judgment in contested matters tried to a jury.
7. The court also notes that in the affidavit attached to the present motion that Mr. Campbell states, "My client, a corporate entity, ..." This statement is in direct contradiction to the following statement found in the "Amended Answer with Counterclaims" filed by Mr. Campbell on May 3, 2016. "[FG] admits that [Graver] is doing business as [FG]."
This appeal timely followed.
IV. FG's Motion to Dismiss
Appellants contend that the circuit court's finding that their motion to dismiss VFD's amended counterclaim was untimely is inexplicable. Appellants claim that VFD asked for permission to file an amended counterclaim and was allowed to do so. Appellants argue that they were entitled to respond under Rule 15(a), which response includes a dismissal motion. Ark. R. Civ. P. 15(a) (2018); see, e.g. , Perry v. Baptist Health , 358 Ark. 238, 189 S.W.3d 54 (2004). Appellants emphasize that the amended counterclaim filed by VFD did not incorporate the earlier complaint by reference; thus, it allowed appellants to assert the full panoply of available defenses, including the Rule 12 defenses. See James v. Williams , 372 Ark. 82, 270 S.W.3d 855 (2008). Appellants simply conclude that the "circuit court's refusal to consider the motion to dismiss based on the court's incorrect conclusion that the motion was untimely was therefore reversible error."
However, this argument does not address the circuit court's order. The "timeliness" referred to by the circuit court is FG's failure to move to dismiss the original counterclaim. The circuit court found:
*480 As noted by Judge Holmes in his order remanding this case back from Federal Court, 'First Government is not a registered business entity, and by all appearances is in fact Paul Graver acting as a sole proprietorship.' As such, it was incumbent upon the Plaintiff to raise the issues asserted in his current Motion to Dismiss in response to the Defendant's original Counterclaim filed in this matter. This the Plaintiff did not do, and such issues are waived.
It is not the duty of this court to research or develop arguments for an appellant on appeal. Green v. George's Farms, Inc. , 2011 Ark. 70, at 10, 378 S.W.3d 715, 722. Because appellants fail to address on appeal the circuit court's reasoning, we affirm the circuit court's denial of appellants' motion to dismiss.
V. Motion for Continuance
Appellants argue that the circuit court erred in refusing to continue or delay the start of trial. Appellants argue that counsel mistakenly believed that trial would begin the day after it was scheduled. The circuit court did not delay the trial, and counsel arrived "just as [VFD] was giving its closing argument." Counsel for appellants gave a closing argument and made several posttrial motions, which were denied. Appellants argue that the trial could have easily been postponed until the afternoon or the next day because it had been scheduled for two days. This would have allowed appellants to present their case to the jury on lack of liability and damages. Appellants argue that the denial of a continuance resulted in a complete and utter denial of access to justice. They claim that the court's denial, both over the phone and off the record, without presentation of argument on the record, was improvident, thoughtless, and without due consideration. Appellants allege that they were prejudiced because they were not allowed to voir dire the jury, cross-examine witnesses, present evidence, rebut arguments, have any input on the jury instructions, or participate in any defense against VFD's claims. Appellants further argue that the circuit court's statement that there was "going to be a twist" to the trial and that appellants' counsel "said he was not going to be here at nine o'clock," but that the trial would go ahead, tainted the jury against appellants. Appellants contend that the trial judge's irritation is not a good reason to refuse to continue the case.
We hold that the circuit court did not abuse its discretion by refusing to grant a continuance. Whether a motion for continuance should be granted lies within the discretion of the circuit court, and its decision in this regard will not be overturned unless the circuit court abused that discretion by acting arbitrarily or capriciously. Roe v. Dietrich , 310 Ark. 54, 835 S.W.2d 289 (1992) ; Smith v. City of Little Rock , 279 Ark. 4, 648 S.W.2d 454 (1983). The circuit court should consider an attorney's conflicts that cause delays in preparing and presenting a case for trial; however, an attorney's trial-schedule conflicts and convenience must be subject to the convenience of the circuit court in setting its trial or hearing docket. Bolden v. Carter , 269 Ark. 391, 602 S.W.2d 640 (1980) ; Johnson v. Coleman , 4 Ark. App. 58, 627 S.W.2d 564 (1982).
VFD cites Cagle v. State , 47 Ark. App. 1, 882 S.W.2d 674 (1994), which is instructive because, even in a criminal matter, there was no abuse of discretion in refusing a continuance when the defendant did not appear on time based on counsel's advice that cases were set on the docket ahead of defendant's and counsel did not anticipate that all of those cases would settle. Having reviewed the procedural history of this case, we hold that the circuit *481 court's strict adherence to its scheduling order was not an abuse of discretion and the judgment is affirmed.
VI. Punitive Damages
Judgment was entered against appellants in the amount of $258,195 in general damages and $1.5 million in punitive damages. Appellants argue that VFD's amended counterclaim does not assert a claim for punitive damages. Appellants note that the only passing mention of punitive damages was in VFD's DTPA claim. Appellants assert that the DTPA does not allow for punitive damages. See Ark. Code Ann. § 4-88-113(f) (Supp. 2017) (DTPA action may be brought to recover actual financial loss). Appellants argue that when VFD learned that appellants would not be in court, it raised the issue of punitive damages for the first time.
Appellants contend that to recover punitive damages, VFD had to prove by clear-and-convincing evidence that appellants continued a course of conduct with malice or in reckless disregard of the consequences, from which malice may be inferred, or that they intentionally pursued a course of conduct for the purpose of causing injury or damages. See Ark. Code Ann. §§ 16-55-206 (Supp. 2017) and -207 (Repl. 2005). Appellants complain that the circuit court's order denying the motion failed to reference the applicable standards. Further, appellants contend that they were provided with no notice regarding VFD's claim for punitive damages. This lack of notice, appellants contend, is the epitome of a due-process violation. Appellants ask this court to undertake a de novo review of the punitive-damages award and set it aside. Alternatively, appellants ask this court to reverse and remand for a new trial.
Any argument regarding the sufficiency of evidence or pleadings was waived when there was no objection to the evidence at the conclusion of the evidence. The appropriate time to move for directed verdict regarding the sufficiency of evidence or regarding punitive damages is when the nonmoving party rests its case. Superior Fed. Bank v. Mackey , 84 Ark. App. 1, 129 S.W.3d 324 (2003). Failing to make a directed-verdict motion on punitive damages or to object to the sufficiency of evidence either at the conclusion of evidence or upon the issuance of jury instructions precludes that issue from being considered on appeal. Id. However, appellants' motion for remittitur is preserved, as the jury's award is not known until after the verdict is given; thus, appellants' arguments regarding excessiveness were not waived. See id.
We are obliged to review punitive damages de novo. In Jim Ray, Inc. v. Williams , 99 Ark. App. 315, 321, 260 S.W.3d 307, 310-11 (2007), we stated,
Punitive damages punish and deter. Their premise is that the compensatory damages have made the plaintiff whole, but further sanctions are justified to punish the defendant for its conduct in the case and to deter future, similar conduct by the defendant and others. In evaluating whether the jury's verdict violated due process, we follow three guideposts: the reprehensibility of [defendant's] conduct; the ratio between compensatory and punitive damages; and the available penalties for similar conduct and prior awards in similar cases. BMW [of North America v. Gore] , 517 U.S. 559, 574-75, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) ; Aon Risk Servs. v. Mickles , 96 Ark. App. 369, 378-79, 242 S.W.3d 286, 293-94 (2006). Our analysis is fluid rather than exact. Ibid. As Judge Posner has put it, we are called to police a constitutionally acceptable range, not a fixed point.
*482 Mathias v. Accor Economy Lodging, Inc. , 347 F.3d 672, 678 (7th Cir. 2003).
When there is an issue of excessiveness, we will review the proof and all reasonable inferences in the light most favorable to the appellee. Hudson v. Cook , 82 Ark. App. 246, 261, 105 S.W.3d 821, 831 (2003).
Ordinarily, we follow a two-step analysis in determining whether a punitive-damage award is excessive. First, we determine whether the award is excessive under state law. That entails an analysis of whether the jury's verdict is so great as to shock the conscience of the court. See Advocat , [Inc. v.Sauer , 353 Ark. 29, 49, 111 S.W.3d 346, 357 (2003) ]. It also entails a consideration of the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party. Hudson [v. Cook , supra ]. Second, we consider the award in light of the federal due process analysis in BMW of North America , [supra ]. This involves an analysis of the degree of the defendant's reprehensibility or culpability; the relationship between the penalty and the harm; and the sanctions imposed in other cases for comparable misconduct. Hudson v. Cook, supra. The United States Supreme Court recently elaborated on the factors to be considered when assessing the degree of a defendant's reprehensibility: whether the harm caused was physical as opposed to economic; whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; whether the target of the conduct had financial vulnerability; whether the conduct involved repeated actions or was an isolated incident; and whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. State Farm Mut. Ins. Co. v. Campbell , 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). The Court in that case also recognized that, in practice, few awards exceeding a single-digit ratio between compensatory and punitive damages will satisfy due process.
Superior Fed. Bank , 84 Ark. App. at 20-21, 129 S.W.3d at 337.
In determining whether the punitive-damages award was excessive under state law, we consider whether the award shocks the conscience of the court. Given the evidence as set forth above, including appellants' direct violation of the circuit court's order to cease and desist any repossession efforts and that repossession of VFD's fire trucks left portions of the county vulnerable, we hold that the punitive-damages award was not excessive under state law. We similarly conclude that the award did not violate federal due process based on the same facts and behavior of appellants as proved by VFD. Further, the punitive-damages award does not exceed a single-digit ratio between compensatory and punitive damages. Id.
VII. Motion for New Trial
Appellants contend that they sought a new trial based on four points: (1) irregularities in the proceedings because they did not participate at trial; (2) counsel's calendaring error was an accident or surprise within the meaning of Arkansas Rule of Civil Procedure 59(a)(3) (2017); (3) the jury's award of punitive damages could only have been made under the influence of passion or prejudice; and (4) the use of a general-verdict form likely precluded appellate review of the jury's basis for awarding punitive damages. The circuit court denied the motion for new trial, finding that the calendaring error was not sufficient to warrant a new trial.
*483 Appellants argue that the question for evaluating a motion for new trial based on irregularities in the proceedings is whether the irregularities materially affected the substantial rights of the party seeking a new trial. Suen v. Greene , 329 Ark. 455, 947 S.W.2d 791 (1997) (holding that a party moving for new trial on basis of irregularity in proceeding or misconduct by jury or prevailing party must show that the party's rights have been materially affected by demonstrating that reasonable possibility of prejudice resulted from misconduct). Appellants argue that their absence from the proceedings prevented them from participating in jury selection, making objections, or presenting evidence. Appellants contend that denying their motion based on irritation with the age of the case was improper, and the denial of the motion for new trial was a manifest abuse of discretion.
A motion for new trial is addressed to the sound discretion of the trial court, and the trial court's refusal to grant it will not be reversed on appeal unless an abuse of discretion is shown. Sharp Co. v. Ne. Ark. Planning & Consulting Co. , 269 Ark. 336, 602 S.W.2d 627 (1980). An abuse of discretion means a discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. Ford Motor Co. v. Nuckolls , 320 Ark. 15, 894 S.W.2d 897 (1995) ; Nazarenko v. CTI Trucking Co. , 313 Ark. 570, 856 S.W.2d 869 (1993).
Buckley v. Summerville , 2018 Ark. App. 100, at 5-6, 543 S.W.3d 534, 538.
We hold that the circuit court did not exercise its discretion thoughtlessly and without due consideration. The circuit court's order explicitly found that appellants' failure to appear is not encompassed under Rule 59(a)(3), which provides that a new trial may be granted for an accident or surprise that ordinary prudence could not have prevented. Ordinary prudence could have easily prevented appellants' failure to appear at the scheduled trial. Further, appellants' absence at trial was not the only limitation they faced because appellants' failure to follow the circuit court's scheduling orders throughout the case had hindered their ability to present evidence and witnesses at trial.
VIII. Motion to Strike Counterclaims
Appellants argue that the circuit court, "apparently acting sua sponte," erred in striking appellants' counterclaims. The circuit court found appellants' pleading untimely because it was filed after the discovery cutoff. Appellants recite Arkansas Rule of Civil Procedure 13(a), which prevents a multiplicity of lawsuits arising from one set of circumstances. See McJunkins v. Lemons , 52 Ark. App. 1, 913 S.W.2d 306 (1996). Appellants contend that under Rule 13, when a pleader fails to assert a counterclaim, he shall be entitled to assert such counterclaim by amended or supplemental pleading subject to the requirements and conditions of Rule 15. Ark. R. Civ. P. 13(e). Under Rule 15, a party may generally supplement or amend his pleadings at any time. Upon motion of an opposing party, the court may strike the amended pleading or grant a continuance if it determines that prejudice would result or the disposition of the cause would be unduly delayed by the amendment. See Ark. R. Civ. P. 15(a), (d). Appellants cite Ultracuts, Ltd. v. Wal-Mart Stores, Inc. , 343 Ark. 224, 33 S.W.3d 128 (2000), holding that it was reversible error to strike the amended complaint when the court made no finding of prejudice.
Appellants contend that, even though appellee filed a motion to dismiss appellants' counterclaim, appellee did not file a motion to strike. The only motion to strike was aimed at appellants' motion for partial judgment on the pleadings. Appellants argue that Rule 15 requires a motion to strike be filed before the circuit court determines *484 whether prejudice would result to that party or if the case would be unduly delayed by the amendment. See Turner v. Stewart , 330 Ark. 134, 952 S.W.2d 156 (1997) (holding that when appellant did not request a continuance or demonstrate that she would be prejudiced or that undue delay would result if the court should allow the amendment, and by applying Rule 15, the circuit court did not abuse its discretion in finding that the amended answer did not prejudice appellant). Appellants argue that, inasmuch as appellee did not file a motion to strike, the striking of appellants' counterclaims was improper, reversible error on its face.
Appellants contend that the circuit court erred by failing to make any finding regarding prejudice or delay, simply finding appellants' pleading untimely because it was filed after the discovery cutoff. Appellants contend that appellee did not demonstrate or even argue that it was prejudiced by the counterclaim. Thus, the circuit court's finding falls short of its finding of prejudice.
Appellants contend that VFD had not sought leave for additional discovery, and appellants' claims arose from the same operative facts, using the same documents and evidence as VFD's claims. Appellants argue that VFD did not demonstrate prejudice. Appellants claim that because there was no prejudice in allowing the pleading, the decision to strike it was an abuse of discretion.
Appellants' arguments ignore the circuit court's reasoning in its September 8, 2016 order as follows:
3. Portions of the Court's prior Order pertaining to the exclusion of Paul Graver as a witness shall remain in effect and Paul Graver and First Government Lease Company shall be prohibited from presenting any other witnesses as they were not produced for a deposition between the dates of November 24 and December 5 as previously ordered by this Court.
4. The Court is striking Paul Graver and First Government Lease Company's claims against the defendant. Paul Graver is doing business as First Government Lease Company and was a party to this action prior to the passing of the Court's discovery deadlines. Accordingly, Paul Graver and First Government Lease Company shall not be permitted to bring any claim against the Defendant herein.
Our standard of review on this issue was stated by the Arkansas Supreme Court:
The circuit court is vested with broad discretion in allowing or denying amendments. Neal v. Sparks Reg'l Med. Ctr. , 2012 Ark. 328, 422 S.W.3d 116. While Rule 15 allows for liberal amendments of pleadings, we adhere to our well-established standard of review that we will not reverse a circuit court's decision allowing or denying amendments to pleadings absent a manifest abuse of discretion. Id.
Deer/Mt. Judea School Dist. v. Kimbrell , 2013 Ark. 393, at 20, 430 S.W.3d 29, 44.
The circuit court's conclusion that appellants would not be allowed to bring any claim against appellee was not an abuse of discretion. The circuit court, being intimately familiar with the case, ruled that there was no difference between Graver and FG. Accordingly, having failed to participate in discovery under the scheduling orders, appellants were properly precluded from bringing their claims after the applicable deadlines had passed.
Affirmed.
Abramson and Murphy, JJ., agree.

Appellants filed a motion on May 16, 2016, to correct the circuit court's ruling that excluded evidence not provided before November 13, 2014. The correct deadline was November 24, 2014, and the circuit court granted this request.

The circuit court issued a show-cause order against appellants' attorney, Matthew Campbell, for his failure to notify the circuit court of the interlocutory appeal, which resulted in a jury being called for service on August 18-19, 2016. After a hearing on September 8, the circuit court did not find Matthew Campbell in contempt but sanctioned him in the amount of $915 for his failure to notify the court of the interlocutory appeal by ordering him to personally reimburse Scott County for the expense of calling in the jury. This order was set aside on February 16, 2017.

This appeal was dismissed by the Arkansas Court of Appeals on June 7, 2017, for failure to file briefs.

The circuit court's docket sheet reflects that a pretrial conference was held on February 9, 2017, but there is no evidence of such hearing in the record. A letter from the court dated January 9, 2017, indicates that the pretrial hearing could have been held without the benefit of a recording.